UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


HOWARD INDUSTRIES, INC.,

        **Plaintiff,**                      **Case No. 2:13-cv-0677**
                                             **JUDGE GREGORY L. FROST**
        **v.**                             **Magistrate Judge E.A. Preston Deavers**

ACE AMERICAN INSURANCE
COMPANY, et al.,

        **Defendants.**


## OPINION & ORDER

This matter is before the Court for consideration of four pending motions. The Court now considers the following filings: (1) Defendant Ace American Insurance Company's ("Ace") motion for judgment on the pleadings (ECF No. 28), Plaintiff's response in opposition (ECF No. 34), and Ace's reply (ECF No. 40); (2) Defendant Starr Technical Risks Agency, Inc.'s ("Starr") motion to dismiss (ECF No. 24), Plaintiff's response in opposition (ECF No.26), and Starr's reply (ECF No. 33); (3) Plaintiff's motion for declaratory judgment (ECF No. 31), Ace's response in opposition (ECF No. 37), and Plaintiff's reply (ECF No. 42); and (4) Ace's cross-motion for partial summary judgment (ECF No. 38), Plaintiff's response in opposition (ECF No. 42), and Ace's reply (ECF No. 45). For the reasons that follow, the Court **DENIES** Ace's motion for judgment on the pleadings (ECF No. 28), **GRANTS** Starr's motion to dismiss (ECF No. 24), **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for declaratory judgment (ECF No. 31), and **GRANTS IN PART** and **DENIES IN PART** Ace's cross-motion for partial summary judgment (ECF No. 38).

## I.     BACKGROUND

This case involves a dispute over the scope of coverage to which Plaintiff is entitled under an insurance contract.  The facts set forth below are summarized from Plaintiff's Second Amended Complaint.

Plaintiff, a chemical manufacturing company, occupied a building that was destroyed by fire (the "Property").  At the time of the fire, Plaintiff was insured under policy number EPRN05099663 ("the Policy").  It is undisputed that Ace is the insurer under the Policy; however, the parties dispute whether Starr was also a party.  The relationship between Plaintiff and Starr is discussed in more detail below.

The parties do not dispute that the Policy was in effect at the time of the fire.  The parties similarly do not dispute that the Policy covers at least some damage caused by the fire. The crux of this case is the extent of coverage to which Plaintiff is entitled under the Policy.

Plaintiff alleges that it complied with all terms and conditions of the Policy, yet was denied full coverage thereunder.  Plaintiff asserts claims of breach of fiduciary duty, breach of contract, breach of the duty of good faith, and punitive damages, as well as two claims for declaratory judgment, against both Defendants.

Plaintiff now moves for declaratory judgment on two relevant provisions of the Policy. First, Plaintiff asserts that it is entitled to recovery under the Pollution Cleanup provision, which provides coverage up to $50,000 (annual aggregate) to remove certain pollutants under certain circumstances.  (ECF No. 24-1, at 10, 19.)  Second, Plaintiff asserts that the Court should accept its interpretation of the Replacement Cost Endorsement.  (ECF No. 24-1, at 28.) Specifically, Plaintiff argues that it is entitled to a coinsurance calculation using the Property's actual cash value rather than its replacement cost value.

Also before the Court are Ace's motion for judgment on the pleadings and Starr's motion to dismiss.  The Court will consider those motions first.

## II.     ANALYSIS

### A.  Ace's Motion for Judgment on the Pleadings (ECF No. 28)

Ace moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Courts employ the same analysis in deciding a Rule 12(c) motion as they apply to motions to dismiss under Rule 12(b)(6).  *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010).  That is, a court must construe the pleading in the opposing party's favor, accept the factual allegations contained therein as true, and determine whether those factual allegations present a plausible claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  In other words, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted).

Ace asserts that it is entitled to judgment on the pleadings because Plaintiff failed to meet a condition precedent to recovery under the Policy.  Specifically, Ace argues that Plaintiff failed to present its representatives for examinations under oath as the Policy requires.  In support of its argument, Ace attaches several emails and letters between the parties purportedly proving that Plaintiff failed to make its representatives available.  Ace posits that the Court can consider those exhibits because they "are a part of the pleadings as they were referenced in Defendant ACE's Affirmative Defenses."  (ECF No. 28, at 6 n.1.)

3

Ace's assertion that the Court may consider the emails and letters attached to its motion is incorrect. Where, as here, a defendant files a Rule 12 motion, the court can consider the complaint, public records, and documents central to the claim that are referenced in the complaint. *See, e.g., Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The emails and letters attached to Defendant's motion are neither referenced in the Complaint nor central to Plaintiff's claims. They are not public record. Those documents therefore constitute matters outside the pleadings for purposes of this Rule 12 analysis.

Ace's position that a Court deciding a Rule 12 motion can consider any exhibits a defendant references or attaches to its answer borders on absurd. If that were the case, any defendant could obtain judgment in its favor by attaching select evidence to its answer and then moving for judgment on the pleadings. Ace attempts to support its argument by pointing out that the term "pleadings" includes "both the complaint and answer," but the Sixth Circuit has made clear that the focus of a Rule 12(c) motion is on the pleadings "of the opposing party." *JPMorgan Chase Bank*, 510 F.3d at 582. Ace offers no authority to the contrary.

Because the exhibits attached to Ace's motion fall outside the pleadings, the Court can only consider them if it converts Ace's motion to one for summary judgment. It declines to do so. The Court therefore will consider Ace's motion without reference to the exhibits it cites and the information contained therein.

Ace argues that, even if the exhibits are excluded from the Court's consideration, the Court must still consider its allegations in its Answer and Affirmative Defenses in deciding whether judgment on the pleadings is proper. Ace asserts that its allegations detailing Plaintiff's alleged noncompliance with the Policy trump Plaintiff's conclusory allegation that it complied with all terms and conditions under the Policy.

4

Ace's position is directly at odds with the United States Supreme Court's pronouncement that a plaintiff need not plead facts negating an affirmative defense. *Jones v. Bock*, 549 U.S. 199 (2007). Under *Jones* and established Sixth Circuit precedent, a court may grant a Rule 12 motion on the basis of an affirmative defense only if that defense appears on the face of the complaint. *See id.* at 215 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)); *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008). Regardless of whether Plaintiff's allegation that it "complied with all terms and conditions of the Policy" is conclusory, it certainly is not clear from the face of the Complaint that Plaintiff failed to meet a condition precedent under the Policy that precludes it from recovery. Ace's argument therefore fails.

Consistent with Sixth Circuit authority that a Court considering a Rule 12(c) motion must analyze the "pleadings of the opposing party," the Court has examined Plaintiff's Complaint. Ace failed to demonstrate that the Complaint is deficient such that Ace is entitled to judgment in its favor. Accordingly, the Court **DENIES** Ace's motion for judgment on the pleadings (ECF No. 28).

### B. *Starr's Motion to Dismiss (ECF No. 24)*

Starr filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which the Court can grant relief. Starr argues that it is not a party to the Policy and therefore cannot be liable for Plaintiff's claims, all of which depend on a contractual relationship between the insurer and its insured.

Plaintiff does not dispute that its claims are dependent on a contractual relationship. In response to Starr's motion, Plaintiff's sole argument is that Starr is a party to the Policy.

Plaintiff does not cite any case law in its brief, choosing to rely instead on a common sense interpretation of the Policy.

Because the Policy is referred to throughout and central to the Complaint, the Court can consider it in analyzing this motion to dismiss.  *See Basset*, 528 F.3d at 430.  The Court therefore must analyze the Policy to determine whether Starr is a party.  *See, e.g., Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union No. 513*, 221 F.2d 644, 647 (6th Cir. 1955) (stating that, if a court considers an exhibit in deciding a motion to dismiss, the exhibit itself, and not the party's allegations about that exhibit, controls).

The Policy lists Ace—and Ace alone—as the "insurance company."  *See* ECF No. 24-1, at 11 (noting that Ace is hereinafter referred to as "This Company").  The Policy goes on to state: "**This Company agrees to insure** (subject to all the terms conditions, limitations and exclusions of this Policy)" the covered Property.  (*Id*. at 23 (emphasis added).)  At the end of the document, the "Signature Page" lists Ace American Insurance Company and contains the signatures of Ace's Secretary and President.  It is clear from the face of the Policy that Ace agreed to insure Plaintiff's Property.

Starr's role in the Policy is much less direct.  Starr is the underwriter of the Policy, which was "issued at" Starr's office in New York.  (*Id*. at 1, 11.)  The Policy appears to have been drafted by Starr.  *See id*. at 9–25 (the Declarations, General Conditions, and Property pages are labeled "ST•AR 100 Declarations," "ST•AR 200 General Conditions," and "ST•AR 300 Property," respectively).  The Policy makes clear that all losses and notice must be reported to Ace through Starr, and that only Starr can assign adjustors to process claims under the Policy.  (*Id*. at 17, 57.)  Finally, the first page of the Policy is signed by one of Starr's managers with the signature block, "Signature of Authorized Agent."  (ECF No. 26-1, at 1.)

6

That page contains the header "ACE American Insurance Company" along with Ace's address. It is clear from the face of the Policy that Starr neither signed the document on its own behalf nor made any promises to Plaintiff.

The Court agrees with Starr that it is not a party to the Policy. Under black-letter Ohio law,[1] a contract requires mutual assent and consideration. "Mutual assent means that both parties to the contract must consent to its terms." *Fenix Enters., Inc. v. M&M Mort. Corp., Inc.*, 624 F. Supp. 2d 834, 841 (S.D. Ohio 2009). To be enforceable, each party's duties under the contract must be definite and certain. *Rayess v. Educ. Comm'n for Foreign Med. Graduates*, 134 Ohio St. 3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, at ¶19 (quoting *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369, 575 N.E.2d 134 (1991)).

Starr did not assent or agree to anything under the Policy. Tellingly, although Plaintiff references Starr's "binding contractual duties," (ECF No. 26, at 3), it does not point to any provision in the Policy in which Starr promised anything. Instead, Plaintiff relies on the circular argument that because it agreed to report claims to Ace's agent, Starr, rather than to Ace itself, Starr must have agreed to be a party to the Policy. But Starr made no such promise to Plaintiff. Moreover, one cannot discern from the face of the Policy whether Starr is to receive any benefit therefrom. Without being either a promisor or a promisee, and without assenting to any clear and definite obligations, Starr cannot be considered a party to the Policy.

Starr's role as the adjustor to whom claims must be reported under the Policy is analogous to an individual adjustor that an insurance company assigns to its claims. The individual adjustor is not a party to the insurance contract and therefore cannot be individually liable for a breach of that contract. *See Baker v. Nationwide Mut. Ins. Co.*, 9th Dist. No.

---

[1] The parties agree that Ohio law governs the Court's interpretation of the Policy.

12CA010236, 2013-Ohio-1856, at ¶¶13–16 (May 6, 2013) (affirming the trial court's dismissal of an individual adjustor's motion to dismiss). The individual adjustor owes no duties, in his or her individual capacity, to the insured. *See id*.; *Johnson v. State Farm Ins. Co.*, 8th Dist. No. 75497, 1999 WL 1206603, at *3 (Ohio Ct. App. Dec. 16, 1999). Like the individual adjustor in *Baker*, here, Starr is not a party to the Policy and has no contractual relationship with Plaintiff.

Similarly, the fact that Starr acted as Ace's agent in drafting and issuing the Policy does not subject it to liability thereunder. *See, e.g., Eaton v. Continental Gen. Ins. Co.*, 147 F. Supp. 2d 829, 837 (N.D. Ohio 2001) ("The well-settled rule in Ohio is that an agent who contracts with a third party on behalf of a disclosed principal, and as the authorized agent of that principal, is not personally liable on the contract."). Plaintiff's argument that Starr "is a signing party," (ECF No. 26, at 3), ignores the fact that Starr signed the Policy only in its capacity as an "Authorized Agent" of Ace. (ECF No. 24-1.)

In short, it is Ace—and Ace alone—that "agree[d] to insure" Plaintiff's Property. (ECF No. 24-1, at 23.) Starr cannot be liable to Plaintiff for the alleged breach of contract, breach of fiduciary duty, or breach of the duty of good faith. Because Starr is not a party to the Policy, the remaining claims for punitive damages and declaratory judgment against Starr must also be dismissed. The Court therefore **GRANTS** Starr's motion to dismiss (ECF No. 24).

C. *Plaintiff's motion for declaratory judgment and Ace's cross-motion for summary judgment (ECF Nos. 31 & 38)*

Plaintiff moves for declaratory judgment pursuant to 28 U.S.C. § 2201 and asks the Court to interpret two provisions in the Policy.[2]  Courts in the Sixth Circuit consider five factors in determining whether declaratory relief is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. Co. v. Consolidated Rail Corp*., 746 F.2d 323, 326 (6th Cir. 1984). Specifically in the insurance context, the Sixth Circuit has stated that declaratory judgment is proper where the question before the court "involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the accident." *Am. States Ins. Co. v. D'Atri*, 375 F.2d 761, 763 (6th Cir. 1967) (quoting *Md. Cas. Co. v. Faulkner*, 126 F.2d 175, 178 (6th Cir. 1942)).  In such a case, "the insurer is entitled to have the extent of the coverage of its policy declared."  *Id*.

Ace does not argue that a declaratory judgment is inappropriate in this case.  In fact, although Ace styles its motion as one for "partial summary judgment," it simply asks the Court to adopt its (Ace's) interpretations of the two contractual provisions at issue.

Because both parties essentially seek a declaratory judgment, and because such a judgment will serve a useful purpose in clarifying the legal issues in this case and will

---

[2] Ace argues that Plaintiff's motion for declaratory judgment is procedurally defective because Plaintiff did not ask for declaratory relief in its Complaint; however, because Plaintiff subsequently filed a Second Amended Complaint including two counts for declaratory judgment, the Court will disregard Ace's arguments regarding procedural deficiencies.

potentially settle this controversy, the Court finds that declaratory judgment is proper.  The

issue before this Court becomes one of contractual interpretation.  Several well-settled rules of

contract construction are relevant to the Court's analysis.

First, contract interpretation is a matter of law for the Court.  *Savedoff v. Access Grp.,*

*Inc.*, 524 F.3d 754,  763 (6th Cir. 2008).  The purpose of contract interpretation is to ascertain

and effectuate the intent of the parties.  *Id.*  "The intent of the parties is presumed to reside in

the language they chose to use in their agreement."  *Id.* (citing *Graham v. Drydock Coal Co.*,

76 Ohio St. 3d 311, 313, 667 N.E.2d 949 (1996)).  "Where the terms in a contract are not

ambiguous, courts are constrained to apply the plain language of the contract."  *Id.* (citing *City*

*of St. Marys v. Auglaize Cty. Bd. of Commr's*, 115 Ohio St. 3d 387, 2007-Ohio-5026, 875

N.E.2d 561, at ¶ 18).  "A court 'is not permitted to alter a lawful contract by imputing an intent

contrary to that expressed by the parties' in the terms of their written contract."  *Id.* (quoting

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 12).

If a contract contains unclear or ambiguous language, a court should interpret that

language in accordance with Ohio's rules of contract construction.  *See id.*  Under those rules, a

court must " 'attempt to reconcile contract terms and give effect to each term.' "  *Export-*

*Import Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 248 (6th Cir. 2010)

(quoting *In re Graham Square, Inc.*, 126 F.3d 823, 830 (6th Cir. 1997)).  Courts "should

attempt to harmonize all provisions in a contract rather than produce conflict in them."  *Ottery*

*v. Bland*, 42 Ohio App. 3d 85, 87, 536 N.E.2d 651 (10th Dist. 1987).  Finally, "[i]f the

language in the contract is ambiguous, the court should generally construe it against the

drafter."  *Savedoff*, 524 F.3d at 764.

Special rules apply to the interpretation of insurance contracts. Clear and unambiguous insurance contracts are to be interpreted in accordance with the rules stated above—that is, a court must apply the clear and unambiguous terms to the facts without engaging in any construction. *Toledo-Lucas Cty. Port Auth. v. Axa Marine & Aviation Ins. (UK), Ltd*., 368 F.3d 524, 530 (6th Cir. 2004). When an insurance contract is subject to more than one interpretation, however, a court must "construe the terms strictly against the insurer and in favor of the insured." *Id*. (quoting *King v. Nationwide Ins. Co*., 35 Ohio St. 3d 208, 519 N.E.2d 1380, 1383 (1988)). In other words, "any reasonable construction which results in coverage of the insured must be adopted." *Nationwide Mut. Ins. Co. v. Wright*, 70 Ohio App. 3d 431, 434, 591 N.E.2d 362 (3d Dist. 1990) (quoting *Sterling Merchandise Co. v. Hartford Ins. Co*., 30 Ohio App. 3d 131, 137, 506 N.E.2d 1192 (9th Dist. 1986)).

With those tenets in mind, the Court turns to the two provisions at issue.

1. Pollution Cleanup provision

The Court first addresses the Pollution Cleanup provision. That provision must be read in conjunction with the Pollution Exclusion Clause, which states:

> This Policy does not insure against loss caused by or resulting from the release, discharge or dispersal of Pollutants on the Insured's premises during the term of this Policy unless the release, discharge or dispersal is caused by fire, lightning, windstorm, hail, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, sonic shock wave, riot, civil commotion or vandalism. This Policy does not insure off-premises cleanup costs from any cause and the coverage afforded by this clause shall not be construed otherwise.

(ECF No. 24-1, at 19 (Conditions (e)), hereinafter referred to as "Exclusion Clause.") The Pollution Cleanup provision then clarifies the scope of coverage when the release, discharge, or dispersal or Pollutants is caused by certain perils (including fire). The Pollution Cleanup provision states, in its entirety:

> This Policy is extended to cover the expenses actually incurred by the Insured **to cleanup and remove debris defined as a Pollutant and other Pollutants <u>from land or water</u> on covered premises** if the release, discharge, dispersal, migration, or seepage of these substances results from any loss or damage occurring during the term of this Policy caused by perils specified in the "Pollution Exclusion Clause" herein subject to an annual aggregate sublimit [of $50,000].

(*Id.* (Conditions (f)), hereinafter referred to as "Cleanup Provision" (emphasis added).)

The issue before this Court involves the Cleanup Provision's use of the term "from land or water." The question is whether "from land or water" modifies the term "debris defined as a Pollutant and other Pollutants" or just the term "and other Pollutants." Stated differently, the parties dispute whether the Cleanup Provision covers (1) expenses incurred to "remove debris defined as a Pollutant" from a building or (2) whether it only covers expenses incurred to "remove debris defined as a Pollutant . . . from land or water on covered premises."

Plaintiff asserts that the fire caused "debris defined as a Pollutant" to be released/ discharged/ dispersed into its building. Plaintiff further asserts that it incurred costs to clean up and/or remove that debris. Plaintiff posits that the Cleanup Provision should be interpreted as follows: "This Policy is extended to cover the expenses actually incurred by the Insured to cleanup and remove debris defined as a Pollutant [and other Pollutants from land or water] on covered premises . . . ." Plaintiff's proposed construction would read like this: "This Policy is extended to cover the expenses actually incurred by the Insured to cleanup and remove debris defined as a Pollutant . . . on covered premises."

Ace interprets the Cleanup Provision to apply only to Pollutants removed "from land or water." Ace's proposed construction would read like this: "This Policy is extended to cover the expenses actually incurred by the Insured to cleanup and remove [debris defined as a Pollutant and other Pollutants] from land or water on covered premises . . . ." Because Plaintiff

removed debris from its building, and not from land or water, Ace argues that Plaintiff is not entitled to recovery under the Cleanup Provision.

In response to Ace's argument, Plaintiff argues that there is no "land or water" on the covered premises such that Ace's proposed construction conflicts with the Policy's definition of the covered Property.  Indeed, the "covered premises" under the Policy includes "all buildings, tanks and structures of every description" located at "1795 Moler Road & 1840 Progress Avenue, Columbus OH 43207," consisting of a "building," "contents," and "combined [business income/extra expenses]."  (*Id*. at 23, 44.)  The Policy expressly excludes from coverage all "**[l]and**, land values, landscaping, roads, lawns, trees, plants, shrubs, standing timber, crops, atmosphere, **any water course or body of water** whether above or below ground, or the restoration or replacement of any of the above."  (*Id*. at 13 (Property Excluded(d)) (emphasis added).)  The Exclusion Clause adds that the Policy "does not insure off-premises cleanup costs from any cause and the coverage afforded by this clause shall not be construed otherwise."

Ace acknowledges that the Policy excludes "land" and "water" from coverage.  Ace asserts, however, that the Cleanup Provision "extends" coverage to "the cleanup and removal of pollutants that had leached into the nearby soil or were discharged into a naturally occurring body of water."  (ECF No. 38, at 18.)

Ace's argument is unpersuasive.  If pollutants "leached into nearby soil or were discharged into a naturally occurring body of water" and Plaintiff attempted to invoke the Policy, Ace could easily deny such a claim because "nearby soil" and "naturally occurring bodies of water" are expressly excluded from coverage.  *See, e.g.,* ECF No. 24-1, at 13 (Property Excluded(d)).)  Similarly, although Ace argues that the Cleanup Provision "extends"

13

coverage if the pollution results from certain causes, the Policy states that it "does not insure off-premises cleanup costs from any cause." (Exclusion Clause, ECF No. 24-1, at 19 (Conditions (e)).) Ace's proposed construction therefore creates an inherent contradiction in the scope of covered premises and the scope of coverage under the Cleanup Provision. Ace's proposed construction also creates a contradiction within the Cleanup Provision itself: it would construe the provision to extend coverage to "cleanup and remove [pollutants] from [naturally occurring] land or water on covered premises," but there is no naturally occurring "land or water" on the covered premises. Ace's proposed construction simply makes no sense.

Plaintiff's proposed construction, which would provide coverage for the removal of "debris defined as a pollutant . . . on covered premises," is the only construction that accounts for the Policy's definition of the property it covers. *See Ottery*, 42 Ohio App. 3d at 87 (stating that a court is tasked with "attempt[ing] to harmonize all provisions in a contract rather than produce conflict in them"). Although the Court acknowledges that Plaintiff's proposed construction creates a somewhat awkward reading of the Cleanup Provision, it is Ace—which drafted the Policy through its agent, Starr—that could have clarified that language. The Cleanup Provision therefore must be strictly construed against Ace. *See Savedoff*, 524 F.3d at 764.

Moreover, because Ace's proposed construction would create a contradiction and therefore an ambiguity, the Court must "construe the terms strictly against the insurer and in favor of the insured." *Toledo-Lucas Cty Port Auth.*, 368 F.3d at 530. Plaintiff's reading of the Cleanup Provision, albeit awkward, is not unreasonable. Plaintiff's proposed construction therefore must be adopted. *See Nationwide Mut. Ins. Co.*, 70 Ohio App. 3d at 434.

Finding that Plaintiff's proposed construction must be adopted, the Court **GRANTS** Plaintiff's motion for declaratory judgment on this issue (ECF No. 31) and **DENIES** Ace's cross-motion for partial summary judgment on this issue (ECF No. 38).

    2.  <u>Replacement Cost Endorsement</u>

The parties dispute the meaning of the Replacement Cost Endorsement ("RCE"), which is an optional benefit under the Policy that Plaintiff purchased. The RCE modifies the original language in the Policy. To put the RCE in context, a brief description of the unmodified Policy is necessary.

Both the Valuation clause and Coinsurance provision from the unmodified Policy are relevant to this dispute. Under the Valuation clause, an insured's loss of a building and other structures was to be calculated at "Actual Cash Value" ("ACV"), which is defined as "replacement cost less depreciation," "unless otherwise endorsed hereon." (ECF No. 24-1, at 15–16.) That means that, in the event Plaintiff's building was lost, Ace would be responsible for the building's ACV (subject to other conditions in the Policy).

The Valuation clause must be read in conjunction with the Coinsurance provision, which states:

> It is expressly stipulated and made a condition of this Policy that the Insured shall at all times maintain contributing insurance on each item of property covered by this Policy to the extent of at least [90%] of the value required per the terms and conditions of the Valuation Clause in this Policy at the time of loss, and that failing to do so, the Insured shall to the extent of such deficit bear his, or their proportion of any loss.

(*Id.* at 12.)[3]  Thus, under the unmodified Policy, Plaintiff was required to maintain coverage of at least 90% of the Property's ACV.  If Plaintiff insured its Property at a number below 90% of the Property's ACV, Plaintiff would be penalized on its claims in proportion to the shortfall.

The RCE modifies the Valuation clause and Coinsurance provision.  The RCE states, in relevant part:

> A.  In consideration of the premium of the policy to which this endorsement is attached and the following Coinsurance Clause being made a part of this policy to apply to the above named coverage, **which Coinsurance Clause supersedes and replaces the Coinsurance Clause otherwise applicable to such coverage, the provisions of this policy applicable only to such coverage is amended to substitute the term "replacement cost" for the term "actual cash value" wherever it appears in the policy**, thereby eliminating any deduction for depreciation, subject however, in all other respects to the stipulations, limitations and conditions stated herein and in the policy to which this endorsement is attached.

> B.  COINSURANCE CLAUSE

> In consideration of the rate and/or form under which this policy is written, it is expressly stipulated and made a condition of this contract that the **Insured shall at all times maintain contributing insurance on each item of property, the replacement cost of which is covered by this policy, to the extent of at least [90%] of the replacement cost (without deduction for depreciation) at the time of the loss,** and that failing to do so, the Insured shall to the extent of such deficit bear his, her or their proportion of any loss.

(ECF No. 24-1, at 28 (emphasis added).)  Accordingly, under the RCE's modification to the Valuation clause, Ace was responsible for the building's replacement cost value ("RCV") in the event of loss.  Under the RCE's Coinsurance Clause, which "supersedes and replaces" the

---

[3] The term "coinsurance" means a relative division of the risk between the insurer and the insured.  15 Couch on Ins. § 220:3 (3d ed. 2005).  Specifically, "[c]oinsurance clauses are provisions in insurance policies that require the insured to maintain coverage to a specified value of the property, and stipulate that, upon his or her failure to do so, he or she becomes a coinsurer and must bear his or her proportionate part of the loss."  *Id.*  "The intent of coinsurance is to reward those who insure at close to full value and penalize those who insure at less than full value."  *Wetmore v. Unigard Ins. Co.*, 107 P.3d 123, 942 (Wash. Ct. App. 2005).

Policy's original Coinsurance provision, Plaintiff was required to maintain coverage of at least 90% of the Property's RCV in order to avoid a coinsurance penalty.

Complicating the issue is the RCE's "Insured's Election Clause."  That clause states:

D.  INSURED'S ELECTION

> **The Insured may elect first to make claim under this policy in accordance with its terms and conditions, disregarding this endorsement, except that the Coinsurance Clause contained in this endorsement and constituting part of the consideration therefore applies to all claims under the above named item(s)** and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its terms, conditions and limitations, provides this Company is notified in writing within 180 days after loss of the Insured's intent to make such further claim.

(*Id.* (emphasis added).)  The Insured's Election Clause is the source of dispute in this case.

At the time of the fire, the Property's ACV was $2,000,000.  The Property's RCV was $3,500,000.  Plaintiff insured the Property at $1,695,000.  As such, it is undisputed that Plaintiff underinsured the Property and would be subject to a coinsurance penalty under either an ACV or RCV calculation.  Logically, a coinsurance penalty calculated using RCV would be substantially higher than a penalty calculated using ACV.

Because of that difference, Plaintiff elected to invoke the "Insured's Election Clause," disregard the RCE, and file an ACV claim under the Policy.  Plaintiff was of the belief that filing an ACV claim would cause the coinsurance penalty to be calculated at ACV, thereby subjecting Plaintiff to a lower coinsurance penalty.  Plaintiff did not make any further claims for additional liability brought about by the RCE.

Despite the fact that Plaintiff filed an ACV claim, however, Ace refused to calculate the coinsurance penalty at ACV.  Ace's position is that, pursuant to the RCE's plain language, the coinsurance penalty is always calculated at RCV regardless of the type of claim the insured

chooses to submit.  Ace explains that, because Plaintiff purchased the RCE, the Policy was underwritten (and the premium was calculated) at RCV.  *See* ECF No. 38-1 (Aff. of Tim Drag). The Coinsurance Clause (requiring the insured to coinsure its property at 90% of RCV) serves to ensure the accuracy of the value on which the Policy was underwritten and the premium was calculated.  *See id.*  Presumably, the Coinsurance Clause also requires the insured to coinsure 90% of the RCV of its Property because, even if the insured elects to submit an ACV claim under the Insured's Election Clause, it can still "make further claim for any additional liability" brought about under the RCE.  (ECF No. 24-1, at 28.)

Plaintiff makes three arguments in support of its position that the coinsurance penalty should be calculated using ACV.  First, Plaintiff argues that the RCE is ambiguous and therefore must be strictly construed against Ace.  Second, Plaintiff argues that the RCE is illusory because, if the coinsurance penalty is always calculated at RCV, then the insured is always incentivized to submit an RCV claim such that the Insured's Election Clause serves no purpose.  Finally, Plaintiff argues that a contract that calculates an insurance company's liability at ACV but coinsurance at RCV is against public policy.

For the reasons set forth below, the Court rejects Plaintiff's arguments and adopts Ace's interpretation of the RCE.

### a.  Ambiguity

Regarding Plaintiff's first argument, the Court agrees with Ace that the RCE is not ambiguous.  The RCE's Coinsurance Clause clearly and unequivocally states that the insured must insure its property to at least 90% of the property's RCV.  (*Id.* ("[T]he Insured shall at all times maintain contributing insurance . . . to the extent of at least [90%] of the replacement cost . . . and that failing to do so, the Insured shall to the extent of such deficit bear his, her or

18

their proportion of any loss.").)  This wording parallels the ACV Coinsurance provision in the

unmodified Policy, which Plaintiff agrees would have subjected it to a coinsurance penalty

calculated at ACV.  Applying that same logic, the RCE's Coinsurance Clause clearly subjects

Plaintiff to a coinsurance penalty calculated at RCV.

The RCE's Coinsurance Clause "supersedes and replaces" the Coinsurance provision in

the unmodified Policy.  (*Id*.)  The RCE's Insured's Election provision then gives the insured an

option to "first" submit an ACV claim, subject to the RCE's Coinsurance Clause, then make a

further claim for additional liability under the RCE.  (ECF No. 24-1, at 28 ("The Insured may

elect first to make claim under this policy in accordance with its terms and conditions,

disregarding this endorsement, **except that the Coinsurance Clause contained in this**

**endorsement and constituting part of the consideration therefore applies to <u>all claims</u>**

**<u>under the above named item(s)</u>** . . . .") (emphasis added).)  Regardless of whether Plaintiff

elects to submit an RCV claim or proceed "first" with an ACV claim, it is clear that the RCE's

Coinsurance Clause applies.  Plaintiff cannot overcome the clear and unambiguous language

compelling the conclusion that, once the RCE is purchased, the coinsurance penalty is to be

calculated at RCV.

Plaintiff attempts to manufacture an ambiguity where none exists by highlighting the

phrase, "the Insured shall at all times maintain contributing insurance on each item of property,

**the replacement cost of which is covered by this policy**, to the extent of at least [90%] of the

replacement cost . . .".  (*Id*. (emphasis added).)  But that phrase does not create an ambiguity.

Rather, the italicized phrase simply references the covered Property.  Because the Insured's

Election clause always allows the insured to seek RCV, even if it "first" submits an ACV

claim, the RCE always "covers" the Property's RCV.  The italicized phrase does not, as Plaintiff suggests, limit the Coinsurance Clause to only RCV claims.

The Court has reviewed the cases Plaintiff cites in support of its position; however, none of those cases address the same contractual provisions at issue here.  Those cases therefore do not support Plaintiff's contention that the RCE is ambiguous.

Finding that no ambiguity exists, the Court must apply the clear and unambiguous terms of the RCE to the facts of this case without engaging in any construction.  *Toledo-Lucas Cty Port Auth.*, 368 F.3d at 530; *see also Florists' Mut. Ins. Co. v. Ludi Greenhouse Mfg. Corp.*, 521 F. Supp. 2d 661, 671 (S.D. Ohio 2007) ("[T]he general rule of liberal construction cannot be used to create an ambiguity where one does not exist.  If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." (quoting *Monticello Ins. Co. v. Hale*, 284 F. Supp. 2d 898, 901 (S.D. Ohio 2003))).  Plaintiff's arguments regarding special rules of construction in the insurance context therefore do not apply.

### b.  Illusory Contract

The next issue is whether the Insured's Election clause is illusory.  Plaintiff argues that, if coinsurance is always calculated at RCV, then the insured would never be incentivized to submit an ACV claim.  Plaintiff concludes that the benefit provided by the Insured's Election clause—the right to choose which type of claim to submit—is illusory.

"An insurance provision is illusory when it appears to grant a benefit to the insured, though in reality it does not." *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, 3d Dist. No. 1-08-17, 2008-Ohio-4953, ¶ 49 (citing *Coleman v. Progressive Preferred Ins. Co.*, 1st Dist. No. C-070779, ¶ 13).  "Courts are not inclined to give insurance provisions a meaning that would

render them illusory." *Id.* (citing *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App. 3d 127, 873 N.E.2d 345, 2007-Ohio-2722, ¶ 133).

That does not mean, however, that an insurance contract will be disregarded whenever it does not produce one party's desired result.  To the contrary, as stated above, a court must construe an unambiguous insurance contract consistently with its plain language.  *Toledo-Lucas Cty Port Auth.*, 368 F.3d at 530.  The Court may not rewrite the parties' contract because one party later decides it entered into a bad deal.

Applying those principles to this case, the Court agrees with Ace that, although Plaintiff may not have gotten the benefit of the RCE in this instance, the RCE and its Insured's Election clause are not illusory.  The Insured's Election Clause clearly provides that Plaintiff could have made a "further claim for any additional liability brought about by this endorsement" after it submitted its ACV claim.  (ECF No. 24-1, at 28.)  Plaintiff therefore could have submitted an ACV claim and then received an additional benefit under the RCE that it would not have received under the unmodified Policy.  The fact that Plaintiff "chose not to make any additional claim for the RCV of any loss," (ECF No. 31, at 2), does not mean that the additional benefit does not exist.

Moreover, as Ace points out, this situation only arose because Plaintiff underinsured its Property.  Had Plaintiff insured its Property at 90% of the Property's RCV, it would have received the full benefit of the RCE, including the right to either submit an RCV claim or first file an ACV claim plus a "further claim for any additional liability brought about by [the RCE]," without suffering a coinsurance penalty.  The fact that the coinsurance penalty reduced or negated that benefit in this instance does not render the RCE illusory.

Finally, the Court notes that the benefit provided to Plaintiff under the Insured's Election clause is not necessarily the right to choose whether to submit an ACV or RCV claim. The Insured's Election clause provides: "[t]he Insured may elect **first** to make [an ACV claim] . . . and the Insured may make further claim for any additional liability brought about by this endorsement . . . ." (ECF No. 24-1, at 28 (emphasis added).) The word "first" suggests that the benefit under the Insured's Election clause is not the right to choose between ACV and RCV—it is the right to "first" submit and receive payment on an ACV claim before purchasing replacement property and then submit a "further claim" for the difference. In other words, the Insured's Election clause contemplates that an insured will always seek to recover the property's RCV. It does not contemplate that an insured will only seek ACV and stop there. Viewed under that lens, Plaintiff's argument that it did not get the benefit of being able to choose between ACV and RCV simply misconstrues the benefit that the Insured's Election clause provides.

### c. Public Policy

Having found that the RCE is unambiguous and provides a benefit to Plaintiff, even if that benefit was not recognized in this case, the Court can only disregard the RCE upon some showing that it is illegal or against public policy. Plaintiff has made no such showing.

First, the Court notes that coinsurance clauses generally are valid under Ohio law. *See, e.g., Fry v. Walters & Peck Agency, Inc.*, 141 Ohio App. 3d 303, 313, 750 N.E.2d 1194 (6th Dist. 2001). Indeed, in *Fry*, an Ohio court of appeals noted that coinsurance clauses "are generally held enforceable in the absence of statutory prohibitions against them . . . [t]here is no such statutory prohibition in Ohio, where coinsurance clauses are commonly included in commercial insurance policies." *Id*.

Second, none of the cases Plaintiff cites stand for the proposition that a contract that calculates coinsurance at RCV, even if the claim is calculated at ACV, is *per se* invalid.  In *Buddy Bean Lumber Co. v. Axis Surplus Insurance Co*., for example, the Eight Circuit Court of Appeals interpreted a replacement cost endorsement that stated: "[Y]ou may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of a replacement cost basis."  715 F.3d 695, 698 (8th Cir. 2013).  The court concluded that the coinsurance provision in the original policy should be read in light of the type of claim (ACV or RCV) the insured elected to submit.  *See id*. at 699–700.  But, importantly, the court found that "this interpretation gives effect to the general object of the policy and the parties' intent."  *Id*. at 700.[4]  That would not be true in this case, where the Policy expressly states that coinsurance is calculated at RCV regardless of the type of claim the insured elects to submit.

This case is more analogous to *Royal Property Group, LLC v. Prime Insurance Syndicate, Inc*., 706 N.W.2d 426 (Mich. Ct. App. 2005).  In that case, the insurance contract clearly stated that coinsurance would be calculated at RCV while the insurer's liability would be calculated using ACV.  *See id*. at 711.  The court first held that the language was clear and unambiguous.  *See id*. at 719.  The court then held that such a provision was neither illusory nor against public policy.  *See id*.  In upholding the policy as written, the court noted:

> [The insured] essentially argues that the insurance policy should be reformed because it is unfair to base coinsurance liability on the RCV of the property while allowing [the insurer] to limit its liability to the ACV of the loss. However, this Court cannot rely on litigants' subjective views of fairness to establish the public policy of this state.

*Id*.  The Court agrees with the *Royal Property Group* court's reasoning that an unfair result in one instance does not invalidate a contract on public policy grounds.

---

[4] The additional cases Plaintiff cites in its briefs address similar provisions as the one in *Buddy Bean*.

As a final matter, the Court notes that Plaintiff's public policy argument ignores the public policy considerations on the other side of the equation.  "[I]t has been stated that in addressing public policy arguments, courts must be mindful that freedom to contract is fundamental.  An agreement freely entered into between the parties should not be lightly disregarded unless it clearly contravenes an established public interest."  *Core Funding Grp., L.L.C. v. McDonald*, 6th Dist. No. L-05-1291, 2006-Ohio-1625, at ¶ 59 (internal citations omitted).

Here, Plaintiff is a sophisticated commercial entity.  Plaintiff was represented by another sophisticated commercial entity, Partners Specialty Group, LLC, in negotiating the Policy.  (Aff. of Tim Drag, ECF No. 38-1.)  Plaintiff agreed under the RCE to coinsure its property at 90% of the Property's RCV or risk suffering a coinsurance penalty.  As such, although policy considerations may support ignoring the RCE in this case, public policy also supports upholding the contract to which Plaintiff agreed.

As a result of the foregoing, the Court concludes that Ace's proposed construction of the RCE must be adopted.  The Court therefore **GRANTS** Ace's cross-motion for partial summary judgment on this issue and **DENIES** Plaintiff's motion for declaratory judgment on this issue.

## III.    CONCLUSION

For the foregoing reasons, the Court takes the following action with respect to the four pending motions in this case:

- **DENIES** Ace's motion for judgment on the pleadings (ECF No. 28);

- **GRANTS** Starr's motion to dismiss (ECF No. 24);

- **GRANTS** Plaintiff's motion for declaratory judgment with respect to the Pollution Cleanup Provision; **DENIES** Plaintiff's motion for declaratory judgment with respect to the Replacement Cost Endorsement (ECF No. 31);

- **DENIES** Ace's cross-motion for partial summary judgment with respect to the Pollution Cleanup Provision; **GRANTS** Ace's cross-motion for partial summary judgment with respect to the Replacement Cost Endorsement (ECF No. 38).

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**